# EXHIBIT A

JONATHAN A. STIEGLITZ
(SBN 278028)
jonathan.a.stieglitz@gmail.com
THE LAW OFFICES OF
JONATHAN A. STIEGLITZ
5482 Wilshire Blvd, Suite 1917
Los Angeles, California 90036
Telephone: (323) 979-2063
Facsimile: (323) 488-6748

Attorney for Plaintiff
Carol Frey, M.D., Inc.

Electronically FILED by
Superior Court of California,
County of Los Angeles
8/06/2026 3:24 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By M. Marquez, Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

Carol Frey, M.D., Inc.

Plaintiff,

v.

Amtrak Company and DOES 1-10,

Defendant.

Case No.: 26STCV24917

Complaint For:

1. RECOVERY OF BENEFITS UNDER 29 U.S.C. §1132 (a)(1)(B)

**(Jury Trial Requested)**

Damages - $82,284.00

Plaintiff Carol Frey, M.D., Inc. (hereinafter referred to as "PLAINTIFF" or "Medical Provider") complains and alleges:

**PARTIES**

1. Plaintiff, is and at all relevant times was a medical corporation, organized and existing under the laws of the State of California. Plaintiff is and at all relevant times was in good standing under the laws of the State of California.

2. Defendant Amtrak Company ("Defendant") is and was licensed to do business in and is and was doing business in the State of California. PLAINTIFF is informed and believes that Defendant is licensed to transact business in the State of California. Defendant is in fact, transacting business in the State of California and is thereby subject to the laws and regulations of the State of California.

3. Based on information provided by Defendant, Plaintiff understands that Aetna Life Insurance Co. ("Aetna") is and was Defendant's agent and representative in connection with stating the manner of payment for medical services and providing other administrative services relating to the Patient's and Defendant's health plan.

4. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 10, inclusive, are unknown to PLAINTIFF, who therefore sues said defendants by such fictitious names. PLAINTIFF is informed and believes and thereon alleges that each of the defendants designated herein as a DOE is legally responsible in some manner for the events and happenings referred to herein and legally caused injury and damages proximately thereby to PLAINTIFF. PLAINTIFF will seek leave of this Court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when they become known to it.

5. At all times herein mentioned, unless otherwise indicated, DEFENDANT/s were the agents and/or employees of each of the remaining defendants and were at all times acting within the purpose and scope of said agency

and employment, and each defendant has ratified and approved the acts of his agent. At all times herein mentioned, DEFENDANT/s had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services; processing and administering the claims and appeals; pricing the claims; approving or denying the claims; directing each other as to whether and/or how to pay claims; issuing remittance advices and explanations of benefits statements; making payments to Medical Provider and its Patients.

## GENERAL ALLEGATIONS

6. This complaint arises out of the failure of DEFENDANT to make proper payments and/or the underpayment to Medical Provider by DEFENDANT and DOES 1 through 10, inclusive, of amounts due and owing now to Medical Provider for surgical care, treatment and procedures provided to Patients, who are insureds, members, policyholders, certificate-holders or were otherwise covered for health, hospitalization and major medical insurance through policies or certificates of insurance issued and underwritten by DEFENDANT and DOES 1 through 10, inclusive.

7. Medical Provider is informed and believes based on Aetna's oral and other representations, made on behalf of Defendant, that the Patient was an insured of DEFENDANT either as a subscriber to coverage or a dependent of a subscriber to coverage under a policy or certificate of insurance issued and underwritten by DEFENDANT and DOES 1 through 10, inclusive, and each of them. Medical Provider is informed and believes that the Patient entered into a valid insurance agreement with DEFENDANT for the specific purpose of ensuring that the Patient would have access to medically necessary treatments, care, procedures, and surgeries by medical practitioners like Medical Provider and ensuring that DEFENDANT would pay for the health care expenses incurred by the Patient.

8. It is standard practice in the health care industry that when a medical provider enters into a written preferred provider contract with a health plan such as

DEFENDANT, that a medical provider agrees to accept reimbursement that is discounted from the medical provider's total billed charges in exchange for the benefits of being a preferred or contracted provider.

9. Those benefits include an increased volume of business because the health plan provides financial and other incentives to its members to receive their medical care and treatments from the contracted provider, such as advertising that the provider is "in network" and allowing the members to pay lower co-payments and deductibles to obtain care and treatment from a contracted provider.

10. Conversely, when a medical provider, such as Medical Provider, does not have a written contract or preferred provider agreement with a health plan, the medical provider receives no referrals from the health plan.

11. The medical provider has no obligation to reduce its charges. The health plan is not entitled to a discount from the medical provider's total bill charge for the services rendered, because it is not providing the medical provider within network medical provider benefits, such as increased patient volume and direct payment obligations.

12. The reason why medical providers have chosen to forgo the benefits of a contract with a payor is that, in recent years, many insurers or network holders such as Defendant's representative Aetna have contracted rates for in-network providers that are so meager, one-sided, and onerous, that many providers like Medical Provider have determined that they cannot afford to enter into such contracts. As a result, a growing number of medical providers have become non-contracted or out of network providers.

13. Payors and insurers still want their patients to be seen and so they commonly promise to pay out of network providers a percentage of the market rate for the procedure, also described as, an average payment for the procedure performed or provided by similarly situated medical providers within similarly situated areas or places of practice. Rather than use the words market rate to

simplify terms, payors have long used words or combinations of words such as usual, reasonable, customary, and allowed, all to mean an average payment for a procedure provided by similarly situated medical providers within similarly situated areas or places of practice ("UCR").

14. The United States government provides a definition for the term UCR. "The amount paid for a medical service in a geographic area based on what providers in the area usually charge for the same or similar medical service. The UCR amount sometimes is used to determine the allowed amount."[1]

15. Based upon these criteria, Medical Provider's charges are usual, customary, and reasonable. Medical Provider charged DEFENDANT the same fees that it charges all other payors. Medical Provider's fees are comparable to the prevailing provider rates in the geographic areas to the one in which the services were provided.

16. DEFENDANT and Aetna use the term UCR in their policies.

17. When DEFENDANT or Aetna on Defendant's behalf uses the term UCR for the price of a medical service, DEFEDANT and/or Aetna will utilize a medical bill database from Fair Health Inc. or the like to determine the exact dollar amount to be paid for a medical claim.[2]

---

[1] *See* Healthcare.gov, UCR (Usual, Customary and Reasonable) (August 1, 2022), https://www.healthcare.gov/glossary/UCR-usual-customary-and-reasonable/ (defining UCR)

[2] United Healthcare, Information on Payment of Out-of-Network Benefits (October 3, 2021), https://www.uhc.com/legal/information-on-payment-of-out-of-network-benefits ("FH, [Fair Health], Benchmarking Database. One of two compilations of information on health care professional charges created by Fair Health and used by affiliates of UnitedHealth Group **to determine payment** for out-of-network professional services when reimbursed under standards such as 'the reasonable and customary amount,' 'the usual, reasonable and customary amount,' 'the prevailing rate,' or other similar terms that base payment on what other healthcare professionals in a geographic area charge for their services."

18. Fair Health Inc. is a database which is available to the public. It is available for purchase when utilized by entities like DEFENDANT or Aetna and it is available for free in a more limited fashion for use by consumers.[3]

19. When a medical provider like PLAINTIFF is told that DEFENDANT or Aetna will be paying a claim based on UCR, PLAINTIFF expects that DEFENDANT or Aetna will be utilizing the Fair Health database to calculate the exact dollar amount that will be paid.

20. Medical Provider is owed proper reimbursement in accordance with the Patient's health plan. *See Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 949 (9th Cir. 2009).

21. Medical Provider is informed based solely on DEFENDANT's representations that Patient's health plan at issue in this litigation is a health plan governed by the Employee Retirement Income Securities Act of 1974 ("ERISA"). Based on DEFENDANTS' representations, Medical Provider asserts that Patient's health plan is an ERISA health plan ("ERISA Plan").

22. Prior to services being rendered, Medical Provider obtained an assignment from the Patient granting Medical Provider the right to step into the shoes of the Patient with respect to Patient's rights under Patient's ERISA Plan, including but not limited to the right to seek proper reimbursement for medical services as well as to seek legal redress for DEFENDANT's failure to properly administer the terms of the ERISA Plan.

23. For Patient's claim, DEFENDANT has waived or is estopped from asserting an anti-assignment provision were one even to exist. *See Beverly Oaks*

---

[3] *See* fairhealthconsumer.org, (August 1, 2022), https://www.fairhealthconsumer.org/medical/results (assisting consumers to calculate the amount to be paid for a particular medical procedure)

*Physicians Surgical Ctr., Ltd. Liab. Co. v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 437 (9th Cir. 2020).

24. For the claims at issue in this suit, Medical Provider has spent significant time and money in jumping through the necessary hoops in exhausting its administrative remedies under ERISA.

25. Medical Provider sent out multiple appeal letters to DEFENDANT and any further appeals would be futile as Medical Provider has received letters stating that DEFENDANT's decision is final.

26. Medical Provider has a reputation for providing high quality care and, as a result, Plaintiff brings this suit to obtain appropriate compensation for Medical Provider's services.

**SPECIFIC FACTS**

**PATIENT CG**

27. On February 25, 2020 – May 14, 2026, Patient received medical services from Medical Provider.

28. Pursuant to 29 U.S.C. §1132 (a)(1)(B) DEFENDANT has failed to reimburse Patient and now Medical Provider in accordance with the terms of Patient's ERISA Plan.

29. Patient's health plan provides for coverage for orthopedic procedures like the ones provided to Patient. There is no exclusion for the services provided to Patient.

30. As the services were covered, according to the health plan, DEFENDANT was obligated to pay Medical Provider's what the health plan describes as the "Reasonable amount rate".

31. The "Reasonable amount rate" is defined as the "90th percentile value reported in a database prepared by Fair Health, a nonprofit company."

32. Defendant's payment was based on a percentage of Medicare and was not based on Fair Health.

33. Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to Medical Provider.

34. Following the medical procedure, Medical Provider submitted a bill to DEFENDANT which stated that Medical Provider had received an assignment from the Patient.

35. At no point in time did DEFENDANT or Aetna on behalf of Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

36. Over the next couple of months, Medical Provider sent numerous appeal letters to DEFENDANT through Aetna in accordance with ERISA to exhaust all of Patient's and now Medical Provider's administrative remedies.

37. In the alternative, Medical Provider alleges that Defendant and Aetna completely frustrated Medical Provider's ability to appeal and exhaust the claim and Defendant and Aetna's denials simply requested documents that had already been produced.

38. Medical Provider even sent Aetna on behalf of Defendant a copy of the assignment between the Patient and Medical Provider. The assignment specifically stated that if the health plan has an anti-assignment, Aetna on behalf of Defendant should let Medical Provider know. Therefore, in the event, Medical Provider was not made aware of an anti-assignment, Medical Provider would proceed to obtain payment based on the assignment with the understanding that the health plan did not have an anti-assignment.

39. In fact, Medical Provider was never informed during the appeal process that Patient's plan had an anti-assignment provision, and that DEFENDANT would only speak with the Patient.

40. DEFENDANT has made clear that Medical Provider has no further administrative remedies or has simply frustrated Medical Provider's ability to utilize those remedies.

41. In all cases DEFENDANT refused to make any additional payment.

42. The total bill was $82,284.00. Defendant paid $23,155.51 which is less than the 90th percentile of Fair Health.

43. Following the procedure, Medical Provider submitted to DEFENDANT through Aetna any and all billing information required by DEFENDANT and Aetna, including a bill for $82,284.00.

44. Following the procedure, MEDICAL PROVIDER submitted its claims to DEFENDANT through Aetna accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of MEDICAL PROVIDER's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. MEDICAL PROVIDER submitted to DEFENDANT through Aetna any and all billing information and any and all additional information requested by DEFENDANT.

45. DEFENDANTS processed the bill and sent an EOB directed to MEDICAL PROVIDER, still not asserting an anti-assignment provision, and made a payment of $23,155.51.

46. The amount paid was well below what would result in a "reasonable profit" to Medical Provider and well below the UCR amount represented during the separate oral communications between Medical Provider and DEFENDANT.

**FIRST CAUSE OF ACTION**

**ENFORCEMENT UNDER 29 U.S.C § 1132 (a)(1)(B) FOR FAILURE TO PAY ERISA PLAN BENEFITS**

47. Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

48. This cause of action is alleged by Medical Provider for relief in connection with claims for medical services rendered in connection with healthcare benefits plans administered and/or underwritten by DEFENDANT.

49. Medical Provider seeks to recover benefits and enforce rights to benefits under 29 U.S.C. §1132 (a)(1)(B). Medical Provider has standing to pursue these claims as the assignee of member/patient's rights. As the assignee of rights, Medical Provider is a "beneficiary" entitled to collect benefits and are the "claimant" for purposes of the ERISA statute and regulations. ERISA authorizes actions under 29 U.S.C. § 1132 (a)(1)(B) to be brought directly against DEFENDANT the party with actual control over the benefit and payment determinations with respect to Medical Provider's claims.

50. DEFENDANT is the payor of benefits.

51. By reason of the foregoing, Medical Provider is entitled to recover ERISA benefits due and owing in an amount to be proven at trial, and Plaintiff seeks recovery of such benefits by way of the present action.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

## PRAYER FOR RELIEF

**WHEREFORE,** Carol Frey, M.D., Inc. prays for judgment against defendants as follows:

1. For compensatory damages in an amount to be determined, plus statutory interest;

2. For restitution in an amount to be determined, plus statutory interest;

3. For a declaration that DEFENDANT is obligated to pay plaintiff all monies owed for services rendered to the Patient;

4. For attorney fees; and

5. For such other relief as the Court deems just and appropriate

.

Dated: August 5, 2026

LAW OFFICE OF JONATHAN A. STIEGLITZ

By: /s/ Jonathan A. Stieglitz
JONATHAN A. STIEGLITZ
Carol Frey, M.D., Inc.